UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ERIC K. BATES,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRIS YAMMAMOTO, in his capacity as Canyon County Clerk; and CANYON COUNTY, a political subdivision of the State of Idaho; and CHARLES "CHUCK" ROLLAND, in his capacity as Gem County Sheriff; GEM COUNTY, a political subdivision of the State of Idaho; TOM DALE, City of Nampa; and LEROY FORSMAN, Nampa Police Department<br><br>    Defendants. | Case No.: 1:12-cv-00631-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**CANYON COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>**(Docket No. 13)**<br><br>**GEM COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>**(Docket No. 14)**<br><br>**CITY OF NAMPA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>**(Docket No. 15)**<br><br>**DEFENDANTS' MOTION TO STRIKE AFFIDAVIT**<br>**(Docket No. 25)** |

    Currently pending before the Court are: (1) Canyon County Defendants' Motion for Summary Judgment (Docket No. 13); (2) Gem County Defendants' Motion for Summary Judgment (Docket No. 14); (3) City of Nampa Defendants' Motion for Summary Judgment (Docket No. 15); and (4) Defendants' Motion to Strike Affidavit (Docket No. 25). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**MEMORANDUM DECISION AND ORDER - 1**

# I. RELEVANT BACKGROUND

1. On September 21, 2010, Nampa Police Officer, Daniel Hoover was dispatched to a Nampa, Idaho address regarding an alleged battery. *See* Defs.' SOF, No. 1 (Docket No. 13, Att. 10).[1] The victim of the battery identified Eric V. Bates (birth year 1972) as the perpetrator. *See id.* Following an investigation, it was determined that Eric V. Bates would be charged with battery. *See* Hoover Aff., ¶ 2 (Docket No. 15, Att. 3).

2. Shortly thereafter, Officer Hoover submitted a Face Sheet and report regarding the battery to obtain a Complaint and Summons. *See* Defs.' SOF No. 2 (Docket No. 13, Att. 10). However, in preparing the documentation, Officer Hoover misidentified the perpetrator as Plaintiff Eric K. Bates (birth year 1977) because, when Officer Hoover accessed the Nampa Police Department's computer software program, he only input "Eric Bates," with no middle initial. *See id.* at SOF No. 3. At the time, Officer Hoover did not realize that Plaintiff was a different person than Eric V. Bates. *See* Hoover Aff., ¶ 3 (Docket No. 15, Att. 3).

3. When service of the Complaint and Summons was unsuccessful, Officer Hoover was requested to prepare a Probable Cause Affidavit so that a Warrant of Arrest could be obtained. *See* Defs.' SOF No. 4 (Docket No. 13, Att. 10). On November 29, 2010, Officer Hoover prepared a Probable Cause Affidavit, properly identifying therein the suspect as Eric V. Bates; yet, when the Warrant of Arrest was issued, it identified the suspect as Plaintiff rather than Eric V. Bates. *See id.* at SOF Nos. 5 & 7. Officer Hoover did not see the Warrant of Arrest

---

[1] Plaintiff admits that Defendants' Statement of Facts "are generally correct with certain notable exceptions." *See* Pl.'s Opp. to Defs.' MSJ, p. 1 (Docket No. 22). Plaintiff does not actually go on to dispute any of the facts referenced within Defendants' Statement of Facts; instead, Plaintiff proceeds to argue Defendants' liability based on the apparently-undisputed facts. *See id.* at pp. 1-2.

**MEMORANDUM DECISION AND ORDER - 2**

after it was prepared and signed by the magistrate judge and did not know that the Warrant of Arrest was issued for Plaintiff. *See id*. at SOF Nos. 6 & 8.

4. Coincidentally, in December 2010, Gem County Detective Corporal Investigator, Richard Perecz, participated in a separate investigation concerning a minor child whose mother is Ellen Bates – Plaintiff's spouse at the time. *See id*. at SOF No. 9; *see also* Perecz Aff., ¶ 2 (Docket No. 14, Att. 2). Neither Ellen Bates nor Plaintiff was the subject of that separate investigation. *See id*.

5. As part of the separate investigation, Detective Perecz conducted a CARES interview of the minor child in Boise, Idaho on December 28, 2010. *See* Perecz Aff., ¶ 3 (Docket No. 14, Att. 2). Detective Perecz then scheduled a follow-up meeting with Ellen Bates at the Bates' residence on December 30, 2010. *See id*. at ¶ 4. In advance of the follow-up meeting, Detective Perecz identified who would be present during the meeting and ran a background check on them through the Idaho Public Safety and Security Information System. *See* Defs.' SOF No. 10 (Docket No. 13, Att. 10). That background check showed that there was an outstanding warrant for Plaintiff. *See id*.

6. When Detective Perecz arrived at the Bates' residence on December 30, 2010, he advised Plaintiff about the existence of the warrant. *See id*. at SOF No. 11. Plaintiff claimed there was a mistake. *See id*. While still at the Bates' residence, Detective Perecz contacted Gem County dispatch on two occasions to verify that Plaintiff was the individual identified on the outstanding arrest warrant; both times, Gem County dispatch confirmed that Plaintiffs Social Security number matched that on the Warrant of Arrest. *See id*.

7. On December 30, 2010, Gem County Sheriff's Deputy William Barry transported Plaintiff to the Gem County Jail where he served the Warrant of Arrest on Plaintiff. *See id*. at

SOF No. 15. In turn, Gem County Detention Sergeant Jacob Reynolds booked Plaintiff at the Gem County Jail. *See id.* at SOF No. 16. At the Gem County Jail, Plaintiff was placed in a holding cell until he could be processed. *See id.* at SOF No. 17. While there, Plaintiff continued to assert that he was mistakenly arrested. *See id.* at SOF No. 18.

8. Around this time, Sergeant Reynolds received a telephone call from Jamie Luna, a Senior Legal Assistant/Secretary in the Canyon County Prosecuting Attorney's Office, requesting that he hold off booking Plaintiff until Mr. Luna could confirm that Plaintiff was the correct Eric Bates. *See id.* at SOF Nos. 19 & 25-26. Apparently, Mr. Luna had received a telephone call from Denise Kennel, the Nampa Court Supervisor at the time, indicating that she believed the wrong Eric Bates had been arrested. *See id.* at SOF Nos. 21 & 22. Ms. Kennel learned about Plaintiff's arrest when she received a telephone call from Canyon County Deputy Court Clerk, Erin Bullard. *See id.* at SOF No. 23. Ms. Bullard had been contacted by another Canyon County Deputy In-Court Clerk, Kim Beckley, who had received a telephone call from her friend, Ellen Bates (Plaintiff's spouse). *See id.*

9. Mr. Luna also attempted to contact Officer Hoover, but was not successful. *See id.* at SOF No. 27. Mr. Luna then contacted Tony Evans, Officer Hoover's supervisor, who relayed to Mr. Luna that he remembered the circumstances of the underlying criminal charges and believed that the information identifying Plaintiff on the Face Sheet was more accurate than the subsequently-prepared Probable Cause Affidavit. *See id.*

10. Mr. Luna placed another telephone call to Sergeant Reynolds, asking him to ask Plaintiff his Social Security number and date of birth. *See id.* at SOF No. 28. After doing so, and confirming that Plaintiff's information matched that on the Face Sheet, Mr. Luna told

**MEMORANDUM DECISION AND ORDER - 4**

Sergeant Reynolds that it appeared the correct person had been arrested. *See id.* Plaintiff was then booked and bonded out of the jail after being there for approximately two hours and 11 minutes. *See id.* at SOF Nos. 29 & 30.

11. On January 5, 2011, the criminal charges brought against Plaintiff were dismissed. *See id.* at SOF No. 31.

12. On November 15, 2012, Plaintiff filed his Complaint against Defendants in Idaho state court. *See* Compl. (Docket No. 1, Att. 3). Therein, Plaintiff alleges that Defendants' conduct was "reckless, willful, wanton, and grossly negligent" and "created an unreasonable risk of harm to the Plaintiff . . . ." *See id.* at ¶¶ 6 & 7. In turn, Plaintiff asserts the following causes of action against all Defendants: False Arrest (Count One), False Imprisonment (Count Two), Violation of Plaintiff's Civil Rights Pursuant to 42 U.S.C. § 1983 (Count Three), and Defamation (Count Four).

13. Defendants removed the action to this Court on December 21, 2012 and, on November 15, 2013, filed the at-issue Motions for Summary Judgment, requesting that each of Plaintiff's claims against them be dismissed. *See* Mots. for Summ. J. (Docket Nos. 13-15).

## II. DISCUSSION

**A. Summary Judgment: The Standard**

A principal purpose of summary judgment is to "isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the nonmoving party to produce evidence sufficient to support a jury verdict in its own favor. *See Anderson*, 477 U.S. at 256-57. The "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Go.*, 336 F.3d at 889. Thus, the nonmoving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and the weight to be accorded particular evidence, and must view the facts in the light most favorable to the nonmoving party. *See Kaelin v. Globe Communications Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998).

The party bearing the burden of proof at trial "must establish beyond controversy every essential element of its . . . claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (adopting decision of district court "as our own"). A party who does not have the burden "may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Fed. R. Civ. P. 56(c)(1)(B) (advisory committee note).

**MEMORANDUM DECISION AND ORDER - 6**

B.  **Plaintiff's Claims Under 42 U.S.C. § 1983 Against Defendant Governmental Entities (Canyon County and Gem County) and Individual Defendants (Yammamoto, Rolland, Dale, and Forsman) Sued in their Official Capacities**

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or the laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 638 (1980). Section 1983 is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In order to sue a municipal entity – including employees acting within their official capacities – a plaintiff must meet the oft-cited *Monell* standard – that is, a plaintiff must show that the alleged injury was inflicted through the execution or implementation of the entity's "official policy."[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible

---

[2] An unconstitutional policy need not be formal or written to create municipal liability under § 1983; however, it must be so permanent and well-settled as to constitute a custom or usage with the force of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970). Relatedly, another judge of this Court more recently confirmed that the challenged "policy" must be the "moving force behind the constitutional violation." *Delacruz v. Coeur D'Alene Police Dept.*, 2010 WL 1817776, *6 (D. Idaho 2010) (citing *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001)).

**MEMORANDUM DECISION AND ORDER - 7**

under § 1983."). "Official policy" may include a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Alternatively, a plaintiff may show that the "decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision" or that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Id*. (internal citations omitted). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-34 (1985).

In support of his § 1983 claims, Plaintiff isn't so much critical of an actual, allegedly unconstitutional policy, but, rather, the *absence* of any policy that would have otherwise prevented him (and, presumably, others) from being mistakenly identified and arrested:

- "Implicit within Plaintiff's Complaint at Paragraph 7 is that there should have been a policy to follow up claims by persons when they protest arrest based upon mistaken identity. . . . . Rather, it was the lack of a policy that led to the false arrest of the Plaintiff."

- "It should be noted that Defendant, Gem County Sheriff Office, does not have a policy for verifying whether the proper person is being arrested."

- "Once again, there is no showing on the record that the Defendant, Nampa Police Department,[3] had a policy, procedure, or practice to make sure that

---

[3] It is unclear whether the Nampa Police Department (or, for that matter, the City of Nampa) is a Defendant in this action. Resolution of these questions, however, is not necessary for the purposes of this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 8**

the proper party was identified by having officers reviewing original information with a data bank. . . . . There is no showing on the record that the Defendant, Nampa Police Department, has a policy, procedure, or custom, to review computerized information against physical copies of police reports."

- "There is no showing by the Defendant, Chris Yammamoto, that if a proper policy or procedure was in effect, a quick review of Eric V. Bates's photo would have shown that the Plaintiff, Eric K. Bates, was not Eric V. Bates."

- "There is also no showing on the record that Defendants, the former Chief of Police, Leroy Forsman, the City of Nampa, or the Nampa City Police Department, had initiated a policy to prevent false arrest claims or misidentifications at the time of arrest. There is no showing on the record that there has been a policy enacted or that one was enforced at the time of the Plaintiff's arrest to make sure that photo I.D.s went with arrest warrants."

- "There is no showing that either a policy existed or does exist now to prevent a repetition of such an event."

- "Plaintiff would also argue that the lack of a policy on the part of the Nampa City Police, requiring photo I.D. when it is readily available for warrants of arrest. [sic]"

- "The Canyon County Clerk, to the best of the Plaintiff's knowledge, does not have a policy requiring, when available, that photographs be attached to arrest warrants. Therefore, to argue that the Canyon County Clerk's office did not have a policy, practice, or custom that led to a deprivation of the Plaintiff's constitutional rights is misleading. It was the lack of such a policy that led to the Plaintiff's arrest in that there was no requirement that a photograph of a defendant be attached to a warrant of arrest."

- "There is no question that there was no policy in effect by the Canyon County Clerk's Office as to how to deal with misidentification issues and arrest warrants."

- "Gem County's lack of a policy concerning misidentification of defendants led to a deprivation of Plaintiff's Constitutional rights."

- "Plaintiff has repeatedly pointed out in this memorandum that all three of the organizations involved, the Gem County Sheriff's Department, Nampa City Police Department, and Canyon County Clerk's Office, lack a policy requiring photo identification of a defendant when a warrant has been issued

> and lacks any sort of policy when misidentification is claimed and photo identification is readily available. The policy that was enforced at the time of Plaintiff's arrest, lacked these components. Therefore, it was an incomplete and flawed policy which led to Plaintiff's false arrest."

- Like the other Defendants, the City of Nampa, Nampa City Police Department, Tom Dale, and Leroy Forsman, have not demonstrated that they had in force, a policy to prevent the misidentifications of defendants with similar names, or a requirement that, when available, a photograph accompany the warrant of arrest."

Pl.'s Opp. to Defs.' MSJ, pp. 2-3, 5-6 (Docket No. 22); Pl.'s Second[4] Opp. to Defs.' MSJ, pp. 4, 6-7, 11-12, 15-16, 18 (Docket No. 18).[5] However, unlike a negligence claim, liability under § 1983 requires more than simply pointing out a governmental entity's failure to do something that may have prevented the alleged harm; indeed, § 1983 liability clearly contemplates conduct consistent with an actual, violative policy/custom. In contrast, a mere allegation (like the one Plaintiff makes here (*see supra*)) that no policy existed to consult available photographs and/or driver's licence records to confirm a perpetrator's true identity, without more, fails to establish a custom or policy to support a claim under § 1983 – particularly when Plaintiff offers absolutely no evidence of similar, repeated cases of mistaken identity that would represent an obvious, institutional need to act, but a conscious and deliberate decision not to do so (thus establishing a *de facto* policy of failing to act a certain way under particular circumstances). Confronting this

---

[4] For clarity's sake, Plaintiff's self-titled "Second Memorandum in Opposition to Defendants' Motions for Summary Judgment" (Docket No. 18) was actually filed three days before Plaintiff's "Memorandum in Opposition to Defendants' Motion for Summary Judgment" (Docket No. 22).

[5] Meanwhile, Defendants emphatically dispute any suggestion that they altogether lack policies for accurately identifying the perpetrators of crimes. *See* Defs.' Reply in Supp. of MSJ, p. 8, n.4 (Docket No. 27). Any question of fact on this point is immaterial toward resolving Defendants' Motions for Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 10**

same issue in the context of a municipality's policy on officer training, the United States Supreme Court commented:

> Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. . . . . The issue in a case like this one . . . is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*See, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *see also Dixon v. Pinal Cnty.*, 2011 WL 2669245, *2 (D. Ariz. 2011) ("Defendants' inaction, standing alone, is not enough to create a triable issue. Ratification is used as a theory of § 1983 liability where 'an unconstitutional *policy* is established by the post hoc ratification of prior actions.' . . . . [But] [t]he ratification theory cannot be stretched to a situation where, as in this case, 'no policy is at issue, but simply a one-time event that had been completed at the time the complaint was made.'") (emphasis in original; internal citations omitted); *McCoy v. Board of Educ., Columbus City Schools*, 515 Fed. Appx. 387, 393 (6th Cir. 2013) ("While the McCoys attempt to classify this as an official policy of inaction, the mere showing of the absence of a policy is insufficient: the McCoys must also prove that the need to act was obvious and that the Board's decision not to have a policy in place was a conscious one."); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (noting that a "single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 laibility").

**MEMORANDUM DECISION AND ORDER - 11**

Said another, analogous way: Before Plaintiff can argue that the absence of a better "mousetrap" (e.g., a more developed policy of ensuring perpetrators' identities including the cross-referencing of data bank materials) supports his § 1983 claim, he must first demonstrate that there is a problem with mice (e.g., other known instances of arresting the wrong person so as to amount to a persistent pattern) in need of that better mousetrap. This, he has not done. While Plaintiff is justifiably aggravated in the extreme by what took place, not every wrong amounts to a *constitutional* wrong. There was admittedly no offensive policy; no documented instances of the same thing happening before or since, coupled with Defendants' knowing disregard of same; and, when made aware of the potential issue with Plaintiff's situation at the time, Defendants tried to get to the bottom of it (albeit, incorrectly so). At most, Defendants' alleged conduct in these respects amounts to negligence which cannot form the basis for imposing liability under § 1983. Defendants' Motions for Summary Judgment are granted in this regard.

**C.    Plaintiff's Claims Under 42 U.S.C. § 1983 Against Individual Defendants (Yammamoto, Rolland, Dale, and Forsman) Sued in their Individual Capacities**

Defendants sued in their individual capacity must be alleged to have personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Relatedly, a defendant not directly involved in the constitutional tort may be held liable as a supervisor under § 1983 if the supervisor "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

To the extent Plaintiff intends to assert claims for damages against Defendants Yammamoto, Rolland, Dale, and Forsman in their individual capacities,[6] his allegations to that end are insufficient. First Defendant Yammamoto (and the other individual Defendants) cannot be held responsible for the allegedly unconstitutional conduct of his subordinates, but only through his individual actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff offers no evidence that Yammamoto knew of, much less set in motion, the circumstances surrounding Plaintiff's arrest.[7] To be sure, Yammamoto was not even the duly-elected Canyon County Clerk when Plaintiff was arrested in December 2010 and could not have been involved in his arrest. *See* Yammamoto Aff., ¶ 2 (Docket No. 13, Att. 2). Second, Plaintiff does not allege that Defendant Rolland, the Gem County Sheriff at the time of Plaintiff's arrest, personally participated in Plaintiff's arrest or did anything in any way that contributed to Plaintiff being mistakenly arrested. *Cf.* Rolland Aff., ¶ 2 (Docket No. 14, Att. 8) ("I was not personally involved in his arrest or incarceration. In fact, I did not know about his arrest or incarceration until after it occurred."). Finally, Plaintiff admits that Defendants Dale and Forsman had no role in Plaintiff's arrest. *See* Pl.'s Second Opp. to Defs.' MSJ, p. 18 (Docket No. 18) ("Plaintiff

---

[6] Plaintiff's Complaint is unclear on this point; in fact, a review of the Complaint's pleading caption suggests that each of these individual Defendants is sued only in their respective official capacities.

[7] Plaintiff's opposition to Defendants' Motions for Summary Judgment discusses Yammamoto's (and other individual Defendants') role as the Canyon County Clerk, with a corresponding duty to make sure that proper data entries are made to the Idaho Repository for Canyon County. *See* Pl.'s Second Opp. to Defs.' MSJ, pp. 2-4 (Docket No. 18). Plaintiff's defamation claim relates to Defendants' alleged improper maintenance of these records; his § 1983 claim does not. *Compare* Compl., ¶ 30-32 (Docekt No. 1, Att. 3), *with id.* at ¶¶ 26-29. Therefore, Yammamoto's alleged role in failing to update/correct any information repository concerning Plaintiff's arrest is immaterial to Plaintiff's § 1983 claim.

**MEMORANDUM DECISION AND ORDER - 13**

would concede that the Defendants, Tom Dale and Leroy Forsman, did not participate individually in the false arrest.").

With all this in mind, Plaintiff has not presented any evidence that Defendants Yammamoto, Rolland, Dale, or Forsman should be held individually liable for others' actions. There is no evidence that they either participated in any conduct connected to Plaintiffs' arrest, or officially condoned the alleged constitutional violation. Given this lack of evidence, Plaintiff's arguments boil down to a respondeat superior claim not cognizable under § 1983. Defendants' Motions for Summary Judgment are granted in this regard.

### D. Plaintiffs' State Law Claims (False Arrest, False Imprisonment, and Defamation)

In addition to his § 1983 claims, Plaintiff alleges that Defendants are liable for state law claims flowing from Plaintiff's arrest, including false arrest, false imprisonment, and defamation. This Court has the constitutional power to hear these pendent state law claims because they share "a common nucleus of operative facts" with Plaintiff's § 1983 claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see also* 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action with [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

Relevant here, the Idaho Tort Claims Act ("ITCA") establishes that governmental entities are subject to liability for their own negligent or wrongful acts, and those of their employees who were acting within the course and scope of their employment. *See Hoffer v. City of Boise*, 257 P.3d 1226, 1228 (Idaho 2011) (citing *Grant v.City of Twin Falls*, 813 P.2d 880, 887 (1991)); *see also* I.C. § 6-903(1) ("Except as otherwise provided in this act, every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or

omissions and those of its employees acting within the course and scope of their employment or duties . . . where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho . . . ."). *However*, the ITCA goes on to expressly exempt certain causes of action from the general rule that governmental entities (and their employees) are subject to liability. *See Hoffer*, 257 P.3d at 1228 (citing *Grant*, 813 P.2d at 887-88). In this respect, the ITCA reads:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . [a]rises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contact rights.

I.C. § 6-904(3). Idaho Code § 6-904(3) precludes liability against the governmental entities regardless of whether those entities' employees were acting with malice or criminal intent. *See Hoffer*, 257 P.3d at 1228 ("The plain language of . . . [Idaho Code § 6-904(3)] exempts governmental entities from liability for the torts it lists, whether or not there has been an allegation of malice or criminal intent."). Relying upon its previous holding in *White v. Univ. of Idaho*, 797 P.2d 108-09 (Idaho 1990), the Idaho Supreme Court in *Hoffer* went on to dissect Idaho Code § 6-1904(3)'s language, concluding in no uncertain terms:

> The requirement that an employee have acted "within the course and scope of their employment" plainly applies to the act of the employee and not of the governmental entity. Therefore, the language "and without malice or criminal intent" that follows the statute's requirement that the employee have acted within the course and scope of employment, also by its plain language only applies to the employee. Thus, "[a] governmental entity . . . shall not be liable for any claim which arises out of libel, slander . . . or interference with contract rights."

*Hoffer*, 257 P.3d at 1228-29 (internal citations omitted). Thus, consistent with *Hoffer*, under the ITCA, any allegation (or even the outright existence) of malice or criminal intent on behalf of a

**MEMORANDUM DECISION AND ORDER - 15**

governmental entity's employee is immaterial when considering whether a governmental entity may be sued under state common law tort theories. Summary judgment is therefore proper as to Defendants Canyon County and Gem County (and, to the extent applicable, the City of Nampa). Defendants' Motions for Summary Judgment are granted in this regard.

As to the viability of Plaintiff's state law claims to the individual Defendants, Plaintiffs must show that they were acting (1) within the course and scope of their employment and (2) with malice or criminal intent. *See* I.C. § 6-904(3). Under Idaho law, "it shall be a rebuttable presumption exists that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent." I.C. § 6-903(5). "Malice" means "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended." *Beco Constr. Co. v. City of Idaho Falls*, 865 P.2d 950, 955 (Idaho 1993). "Criminal intent" exists "if it is shown that the defendant knowingly performed the proscribed acts." *Doe v. Durtschi*, 716 P.2d 1238, 1242 (1986). Accordingly, to survive summary judgment on this point, Plaintiff must point to some evidence – beyond, simply, the allegations contained in his Complaint – that Defendants Yammamoto, Rolland, Dale, and Forsman acted maliciously or with criminal intent.

Aside from the acknowledged mistakes leading up to Plaintiff's arrest, there is no evidence of the individual Defendants' malice, ill will, or criminal intent toward Plaintiff himself; this reality is fatal to Plaintiff's state law claims against them. To the contrary, actions were taken in an attempt to make sure that the correct Erik Bates was arrested. That the wrong

**MEMORANDUM DECISION AND ORDER - 16**

Erik Bates was actually arrested is unquestionably unfortunate, but that fact alone does not mean that such conduct was undertaken with malice or criminal intent *ipso facto*. For liability to attach (or, at least, to avoid summary judgment), Plaintiffs must point to more concrete evidence of the disconnect between what the individual Defendants knew or should have known relative to Plaintiff's true identity and their purposeful conduct notwithstanding (and in disregard of) that knowledge. Additional steps could have been implemented to protect against the possibility of a mistaken identity arrest; however, the fact that such steps were not in place in the instance of Plaintiff's arrest is not, by itself, proof that any of the individual defendants intended or acted with a state of malice, seeking to create confusion surrounding Plaintiff's identity so as to result in his mistaken arrest.

A wrong occurred, this is true; but under the ITCA, Plaintiff's state law claims for false arrest, false imprisonment, and defamation cannot stand absent more particularized evidence suggesting that the individual Defendants directed their conduct toward Plaintiff with malice or criminal intent. For these reasons, summary judgment is proper as to the individual Defendants. Defendants' Motions for Summary Judgment are granted in this respect.[8]

---

[8] There is no dispute that the wrong Erik Bates was arrested. As was discussed during the oral argument upon this motion, the undersigned is troubled by the fact that Plaintiff's record of arrest has not been correspondingly corrected. However, the claims at issue before the Court (and the money damages available attendant thereto) do not provide an avenue to compel such equitable relief. Additionally, such relief would involve the State of Idaho (as the administrator of the Idaho Court's Repository) – an entity not a party to the instant action. *See* Reply in Supp. of Defs.' MSJ, p. 4 (Docket No. 27) (citing Idaho Code § 1-1623). Finally, Idaho Court Administrative Rule 32(i) provides the appropriate mechanism for Plaintiff to seek the correction of any incorrect arrest record. *See* Idaho Ct. Admin. R. 32(i) ("Any interested person or the court on its own motion may move to disclose, redact, seal or unseal a part or all of the records in any judicial proceeding."). Even so, it would seem an appropriate action for the arresting agency and the agency issuing the problematic arrest warrant each to seek an avenue on its own to make a record of the fact of the error, so that a person coming across the information in the future would also have reason to be aware that the arrest was the result of a mistaken identity.

**MEMORANDUM DECISION AND ORDER - 17**

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that

1. Canyon County Defendants' Motion for Summary Judgment (Docket No. 13) is GRANTED;

2. Gem County Defendants' Motion for Summary Judgment (Docket No. 14) is GRANTED;

3. City of Nampa Defendants' Motion for Summary Judgment (Docket No. 15) is GRANTED; and

4. Defendants' Motion to Strike Affidavit (Docket No. 25) is DENIED, as moot.

DATED: **August 7, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge